**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | |
|---|---|
| **ARNULFO PACAY GARCIA,** § | |
| Petitioner, § | |
| § | |
| v. § | EP-25-CV-00591-DB |
| § | |
| **WARDEN,** *of El Paso Camp Montana East,* § | |
| *et al.,* § | |
| **Respondents.** § | |

## MEMORANDUM OPINION AND ORDER

On this day, the Court considered Petitioner Arnulfo Pacay Garcia's ("Petitioner") "Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241" ("Petition"), filed on November 25, 2025, ECF No.[1] 1. After due consideration, this Court asserts its jurisdiction over Petitioner's claims and hereby orders Petitioner's bond hearing be held in accordance with the deadlines set forth herein or be released from custody. For the following reasons, the Petition is granted in part.

## BACKGROUND

Petitioner is a 35-year-old Guatemalan national who entered the United States without inspection on December 18, 2023. ECF No. 1-1 at 4. Petitioner was apprehended upon his unlawful entry into the United States in 2023, served with a Notice to Appear (NTA) in immigration court, and released under an Order of Release on Recognizance. ECF No. 4 at 2 (citing ECF No. 4, Ex. A (Record of Deportable/Inadmissible Alien, I-213) at 2). Immigration and Customs Enforcement ("ICE") took Petitioner back into custody without a warrant on or about

---

[1] "ECF No." refers to the Electronic Case Filing ("ECF") number for documents docketed in this matter. When a discrepancy exists between page numbers on filed documents and page numbers assigned by the ECF system, the Court will use the page numbers assigned by the ECF system.

October 16, 2025. ECF No. 1-1 at 14. He is presently detained at the El Paso Service Processing Center in El Paso, Texas. ECF No. 1 at 1. Petitioner does not have any criminal history. *Id.* at 14. Petitioner is married to a US citizen and has three U.S. citizen children who depend on him. ECF No. 1 at 7.

On November 25, 2025, Petitioner filed the instant petition *pro se*. Therein, he asks this Court to assume jurisdiction over this matter, declare that his continued detention lacks statutory authority and violates his due process rights, and issue a writ of habeas corpus ordering his immediate release. ECF No. 1-1 at 9. Pursuant to the Court's briefing schedule, Respondents filed their response, ECF No. 4, on December 2, 2025.

## LEGAL STANDARD

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. CONST., Art. I, § 9, cl. 2). This includes immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). The petitioner seeking habeas relief must demonstrate she is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3); *Walker v. Johnston*, 312 U.S. 275, 286 (1941).

## ANALYSIS

Respondents erroneously assert the Court is without jurisdiction to review Petitioner's asserted claims. This Court recently rejected nearly identical arguments in a similar case. Further, the Court finds Petitioner's as-applied challenge under the Fifth Amendment's Due Process Clause has merit. Accordingly, Respondents must provide Petitioner with a bond hearing before an

immigration judge in accordance with the orders herein or immediately release him. Lastly, because the Court finds an as-applied challenge meritorious,[2] it declines to address any other claims.[3]

A.   Jurisdiction

As a threshold matter, the Court asserts its jurisdiction over this case. This Court has already rejected Respondents' identical arguments related to 8 U.S.C. §§ 1252(g) and (b)(9). *See Vieira v. De Anda-Ybarra*, No. EP-25-CV-00432-DB, 2025 WL 2937880 at *3 (W.D. Tex. Oct. 16, 2025) (rejecting jurisdictional arguments under Section 1252(g) and Section 1252(b)(9) based on Supreme Court precedent). Here, because there are no meaningful differences[4] in Respondents' arguments under those provisions, the Court rejects them for the reasons stated in *Vieira*.

Among their previous jurisdictional arguments, Respondents raise a new one based on Section 1225(b)(4). ECF No. 4 at 10–11. Respondents argue that "if an alien contests that he is an applicant for admission subject to removal under § 1225(b), any claim challenging his continued detention under § 1225(b) is inextricably intertwined with the removal proceedings themselves,

---

[2] The parties argue about Respondents' novel interpretation regarding mandatory detention under Section 1225(b) and whether Petitioner falls within it. Even assuming without deciding Respondent's reading is correct, the Court will not address these arguments because the Court finds Petitioner is entitled to procedural due process in his as-applied challenge.

[3] Notably, courts across the country have recently held that Respondent' interpretation is either incorrect or likely incorrect. *See Buenrostro-Mendez v. Bondi*, 2025 WL 2886346 (S.D. Tex. Oct. 7, 2025), 2025 WL 2886346, at *3 (noting that "almost every district court to consider this issue" has rejected the Government's new interpretation); *Lopez-Campos v. Raycraft*, 2025 WL 2496379, at *8 n.5 (E.D. Mich. Aug. 29, 2025) (collecting twelve such decisions).

[4] The Court further reiterates its warning that Respondents "carefully consider the jurisdictional legal arguments it continues to present this Court in similar immigration habeas cases." *See Rodriguez Cortina, v. De Anda-Ybarra*, No. EP-25-CV-00523-DB, 2025 WL 3218682 (W.D. Tex. Nov. 18, 2025).

meaning that judicial review is available only through the court of appeals following a final administrative order of removal. *See* 8 U.S.C. § 1225(b)(4)." ECF No. 4 at 11. Respondents' Section 1225(b)(4) arguments are entirely unavailing. *See, e.g., Erazo Rojas v. Noem,* No. 3:25-cv-443-KC, 2025 WL 3038262, at *2 (W.D. Tex. Oct. 30, 2025) (rejecting § 1225(b)(4) arguments). Section 1224(b)(4) addresses an immigration officer's challenge to another officer's favorable determination that a noncitizen is admissible. 8 U.S.C. § 1225(b)(4). This section requires that such challenge be funneled to the court of appeals after a final order of removal. *Id.* Here, Respondents entire argument rests on the premise that Petitioner has not received a favorable admission determination. Accordingly, Respondents' jurisdiction arguments fail, and this Court asserts its jurisdiction over the case.

B.  Procedural Due Process

Turning to the merits, Petitioner alleges his detention violates the Fifth Amendment's Due Process Clause. ECF No. 1-1 at 9. Respondents argue Petitioner has no procedural due process claim because he is subject to mandatory detention under Section 1225(b), and he is not entitled to any more process than the statute gives him. ECF No. 4 at 12.

1.  *Petitioner is entitled to the Fifth Amendment's Due Process Clause protections.*

The Fifth Amendment's Due Process Clause forbids the government to "depriv[e]" any "person . . . of . . . liberty . . . without due process of law." U.S. CONST. amend V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. David*, 533 U.S. 678, 690 (2001) (citing *Foucha v. Louisiana,* 504 U.S. 71, 80 (1992)). The Supreme Court "has said that government detention violates that Clause unless the detention is ordered in a *criminal* proceeding

with adequate procedural protections, *see United States v. Salerno,* 481 U.S. 739, 746 (1987), or, in certain special and 'narrow' nonpunitive 'circumstances,' *Foucha,* 504, U.S. at 80, where a special justification, such as harm-threatening mental illness, outweighs the 'individual's constitutionally protected interest in avoiding physical restraint.'" *Kansas v. Hendricks,* 521 U.S. 346, 356 (1997). *Id.* "Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property." *Carey v. Piphus,* 435 U.S. 247, 259 (1978).

Respondents first contend Petitioner has no claim of right under the Fifth Amendment's Due Process Clause because he is only entitled to the due process provided to him under the INA. ECF No. 4 at 12. Respondents cite to *Dept. of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103 (2020) to support their position. *Id.* at 11–12. But this Court agrees with the line of other courts that have found *Thuraissigiam* is not preclusive on the facts of this case. Petitioner is not challenging his removal, but rather his detention during removal. And, while he was initially detained upon entry, he was released on his personal recognizance into the United States where he has lived for nearly two years. Petioner's present detention arises from apprehension after he effected an entry.

In *Thuraissigiam*, the Supreme Court held "[m]ore than a century of precedent establishes that, for aliens seeking initial entry, 'the decisions of executive or administrative officers, acting within powers expressly conferred by Congress, are due process of law.'" *Thuraissigiam*, 591 U.S. at 104. The petitioner in that case had been detained after making it 25 yards into U.S. territory, and the Court made clear that an individual detained shortly after unlawful entry cannot be said to

have "effected an entry." *Id.* In declining an as-applied constitutional challenge to Section 1252(e)(2), the Court reasoned that "[w]hile aliens who have established connections in this country have due process rights in deportation proceedings, the Court long ago held that Congress is entitled to set the conditions for an alien's lawful entry into this country and that, as a result, an alien at the threshold of initial entry cannot claim any greater rights under the Due Process Clause." *Id.* at 107.

Respondents urge the Court to find *Thuraissigiam* squarely rejects an as-applied challenge in this context, arguing "[t]he close proximity between Petitioner's unlawful entry into the United States and his apprehension by immigration authorities is similar to the alien in *Thuraissigiam*. Just like Petitioner, the alien in *Thuraissigiam* was on "the threshold of entry" as an applicant for admission detained under § 1225(b)(1)(A). Although Petitioner was issued an NTA and the alien in *Thuraissigiam* was not, both are nonetheless applicants for admission as defined by § 1225(a)(1), and *Thuraissigiam* remains binding." ECF No. 4 at 12.

Respondents' position overlooks the well-established "distinction between an alien who has effected an entry into the United States and one who has never entered [that] runs throughout immigration law." *Zadvydas*, 533 U.S. at 693. "[O]nce an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all "persons" within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Id.* (collecting cases). Even in *Thuraissigiam*, the core point of the Court's analysis in rejecting an as-applied challenge rested on the fact that as an individual who was detained on the initial threshold of entry, he wasn't entitled to more due process than that afforded by statute. Precedent and logic

tell us that those individuals who have established ties in the country are protected by constitutional procedural due process. After all, it is a "well established" rule "that the Fifth Amendment entitles aliens to due process of law." *Trump v. J. G. G.*, 145 S. Ct. 1003, 1006 (2025).

Here, it is undisputed Petitioner has lived in the United States since his initial entry in 2023, after he was released on his own recognizance following his initial apprehension at the border. ECF No. 4 at 2. He is married to a United States citizen and has three United States citizen children who depend on him. ECF No. 1 at 7. He was re-detained on October 16, 2025, and is challenging the lawfulness of his current detention without being afforded a bond hearing. ECF No. 1-1 at 4–5. Accordingly, Petitioner is entitled to the Fifth Amendment's Due Process Clause protections.

    2. *Based on <u>Mathews v. Eldrige,</u> Section 1252(b) is unconstitutional as applied to Petitioner.*

Finding Petitioner is entitled to procedural due process protection under the Fifth Amendment, the question becomes how much. Petitioner argues Section 1252(b)[5] is unconstitutional as applied to him because it violates his due process rights including his right to a hearing before an immigration judge to determine whether he is a flight risk or a danger to the community. ECF No. 1 at 8. Respondents argue due process does not require Petitioner to be afforded a bond hearing, because Section 1225(b) does not provide one to him during removal proceedings. ECF No. 4 at 11. For reasons already discussed, Respondents arguments are misplaced. Further, Respondents argue Petitioner is receiving sufficient process because he is in full removal proceedings, where "the constitutional protections are built" in. *Id.* at 4. But that

---

[5] The Court finds the fact that Petitioner is detained under Section 1225(b)(1) versus 1225(b)(2) inconsequential for purposes of its analysis.

argument misses the mark because whatever constitutional procedures are required for his removal are separate and apart from the procedures required for his detention under the Fifth Amendment.

The Supreme Court's balancing test in *Mathews v. Eldrige* is dispositive. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). "[I]dentification of the specific dictates of due process generally requires consideration of three distinct factors": (1) "the private interest that will be affected by the official action"; (2) "the [g]overnment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail," and (3) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Id.* at 335.

The first *Mathews* factor weighs in Petitioner's favor. Respondents' position is that Petitioner does not acquire a protected liberty interest until his detention becomes prolonged, and Petitioner has no colorable claim here because "he has only been detained a brief period pending his removal proceedings." ECF No. 4 at 13. This position fails to consider that above all else, Petitioner has acquired a liberty interest by being present in the United States for nearly two years. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. One's physical freedom is a paramount interest secured by statutes and the Constitution. *Martinez v. Noem*, No. EP-25-CV-430-KC, 2025 WL 2965859 at *3 (W.D. Tex. Oct. 21, 2025) (citation omitted). This applies to noncitizens as well, even if only to varying degrees. *Id.* "[O]ur

8

immigration laws have long made a distinction between those aliens who have come to our shores seeking admission . . . and those who are within the United States after an entry, irrespective of its legality." *Martinez v. Hyde*, 792 F.Supp.3d 211 at 222 (D. Mass. 2025) (quoting *Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958)). "In the latter instance the Court has recognized additional rights and privileges not extended to those in the former category who are merely 'on the threshold of initial entry.'" *Id.* (quoting *Leng May Ma*, 357 U.S. at 187).

Here, Petitioner has been living in the United States for nearly two years and has no criminal history. ECF No. 1-1 at 4. Like many courts across the country dealing with similar circumstances, this Court finds Petitioner possess a strong liberty interest in his freedom from detention because he has established a life here – albeit without authorization. *See, e.g,, Martinez v. Noem,* No. EP-25-CV-430-KC, 2025 WL 2965859 (W.D. Tex. Oct. 21, 2025)*; Sanchez Alvarez v. Noem*, No. 25-CV-1090, 2025 WL 2942648, at *1, 7 (W.D. Mich. Oct. 17, 2025); *Chogllo Chafla v. Scott*, Nos. 25-CV-437, 438, 439, 2025 WL 2688541, at *1, 10 (D. Me. Sept. 22, 2025). Accordingly, he possesses a cognizable interest in his freedom from detention that deserves great weight and gravity.

Turning to the second *Mathews* factor, which also weighs in favor of Petitioner. Here, the Court considers "the [g]overnment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. Respondents, of course, have a generalized interest in ensuring noncitizens appear for their removal hearings and do not pose a risk to the communities in which they live. While it appears from this record that Petitioner would not be a flight risk and has no

criminal history that would pose a danger to the community, Respondents could certainly vindicate this interest at a bond hearing. The government's interest is generally protected by affording bond hearings like the one Petitioner is requesting. Further, any fiscal or administrative burdens Respondents may assert by having to provide a bond hearing are diminished given the government had conducted such hearings until a change in the agency's interpretation of the law. ECF No. 4 at 9 ("ICE does not dispute that this interpretation differs from the interpretation that the agency has taken previously, nor does it dispute that the agency's own regulations necessarily support the prior interpretation."). Accordingly, this factor weighs in favor of Petitioner.

     Lastly, the third *Mathews* factor also weighs in favor of Petitioner. This calls for the Court to consider "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Mathews*, 424 U.S. at 335. Here, Section 1225(b) as applied creates a substantial risk of erroneous deprivation of Petitioner's interest in being free from arbitrary confinement pending resolution of his removal proceedings. The risk lies in the automatic continued deprivation of liberty for a noncitizen who has lived in the United States for over nearly two years and no criminal history, especially where there are no facts in the record to reflect Petitioner's dangerousness or flight risk. Lastly, the value of additional safeguards is high given that it will allow an immigration judge conducting a bond hearing to make a determination on specific facts whether continued detention is necessary to ensure presence at removal hearings and safety for the community. Because all *Mathews* factors weigh in favor of Petitioner, Section 1225(b) as applied to Petitioner violates his Fifth Amendment Due Process rights.

C.      Remedy

While courts grappling with the appropriate remedy in similar cases have ordered immediate release, this Court will instead order a bond hearing before an immigration judge first. But should Respondents disclaim the jurisdiction to do so, Petitioner must be immediately released. Further, at said bond hearing, the government shall bear the burden[6] of justifying Petitioner's continued detention during the pendency of his removal proceedings by clear and convincing evidence. Several courts have followed this course of action in similar habeas cases. *See e.g. Lopez-Arevelo*, 2025 WL 2691828 at *12–13; *Velasquez Salazar v. Dedos*, No. 25-CV-835, 2025 WL 2676729, at *9 (D.N.M. Sept. 17, 2025); *Morgan v. Oddo*, No. 24-CV-221, 2025 WL 2653707, at *1 (W.D. Pa. Sept. 16, 2025); *J.M.P. v. Arteta*, No. 25-CV-4987, 2025 WL 2614688, at *1 (S.D.N.Y. Sept. 10, 2025); *Espinoza*, 2025 WL 2581185, at *14; *Arostegui-Maldonado v. Baltazar*, 2025 WL 2280357, at *12 (D. Colo. Aug. 8, 2025).

## **CONCLUSION**

For the reasons stated above, this Court determines it has jurisdiction over the instant matter, and Petitioner has established a violation of the Fifth Amendment's Due Process Clause as applied to him. Accordingly, the following orders shall issue:

---

[6] *See Lopez-Arevelo*, 25 WL 2691828 at *12 (noting that "as of 2020, the 'vast majority'—an 'overwhelming consensus'—of courts granting immigration detainees' habeas petitions have placed the burden on the Government to prove by clear and convincing evidence that the detainee poses a danger or flight risk. *Velasco Lopez*, 978 F.3d at 855 n.14 (citations omitted). Allocating the burden in this manner reflects the concern that '[b]ecause the alien's 27 potential loss of liberty is so severe . . . he should not have to share the risk of error equally.'" (quoting *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 214 (3d Cir. 2020)).

**IT IS HEREBY ORDERED** that Petitioner Arnulfo Pacay Garcia's "Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241," ECF No. 1, is **GRANTED IN PART**.

**IT IS FURTHER ORDERED** Respondents **SHALL PROVIDE** Petitioner with a bond hearing before an immigration judge **no later than December 11, 2025** at which the government shall bear the burden of justifying, by clear and convincing evidence, the dangerousness or flight risk for Petitioner's continued detention; or (2) release Petitioner from custody, under reasonable conditions of supervision, during the pendency of his removal proceedings.

**IT IS FURTHER ORDERED** Respondents **SHALL FILE** an advisory informing the Court when the bond hearing will be held in accordance with the preceding order **no later than December 9, 2025**.

**IT IS FINALLY ORDERED** Respondents **SHALL FILE** an advisory informing the Court, in detail, of the reasons for the IJ's bond hearing decision **no later than December 16, 2025.**

**SIGNED** this **5th** day of **December 2025**.

_____
THE HONORABLE DAVID BRIONES
SENIOR UNITED STATES DISTRICT JUDGE